ANDREW McLELLAN AND GEORGE ANDERSON v. WILLIAM E. WALSH.

*Bills and notes—Payment to agent of indorser.*

The indorsers of a note delivered to their attorney, to whom they were indebted for professional services, a chattel mortgage given to them as security for their indorsement, for the purpose of enabling him to enforce payment of the note. On receiving such payment the attorney gave to the maker a receipt in the names of the indorsers, by him as their attorney, in full for the note, in which he agreed to deliver the note to the maker when paid by him, and to release the maker from all liability thereon, and thereupon he discharged the mortgage. The indorsers, who had made an assignment for the benefit of creditors the day before the receipt was given, joined with the receiver, afterwards appointed, in an assignment to the holders of the note of all claim to the money paid to the attorney. In a suit by the holders of the note against the attorney to recover said money, the latter testified that the indorsers authorized him to apply the money on his account against them, but did not show that the maker assented to such application. And it is held that the defendant had no right, under the circumstances, to make such an application of the money, and that the plaintiffs could recover the same.

Error to Wayne. (Hosmer, J.) Submitted on briefs February 16, 1894. Decided March 6, 1894.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Barbour & Rexford,* for appellants.

*Ormond F. Hunt,* for defendant.

LONG, J. Plaintiffs discounted the note of J. G. Troxell, indorsed by Charles Bobzin & Co. for accommodation, for $135. To indemnify Bobzin & Co. against their liability on this note, Troxell and wife gave them a chattel mort-

gage on their furniture.    This chattel mortgage was duly filed.    The note became due April 9, 1892, and was renewed for the unpaid balance of $110, and the renewal note was indorsed by Bobzin & Co. for accommodation.    May 24, 1892, $10 was paid on this renewal note, and nothing has since been paid.    For the purpose of compelling Troxell to pay the note, Bobzin & Co. placed the chattel mortgage in the hands of defendant, Walsh, as their attorney.    Peter E. Park was the attorney for the Troxells, and, acting for them, went to Walsh, and paid him the sum of $101.73, being the amount of the plaintiffs' note and interest to that date.    He took the following receipt from Mr. Walsh:

"DETROIT, October 13, 1892.

"Received from J. G. Troxell the sum of $101.73, the same being in full for note given by J. G. Troxell to Charles Bobzin & Co., indorsed by Charles Bobzin & Co., and now at the bank of McLellan & Anderson; and I hereby agree to deliver up said note to the said Troxell when paid by me, and I hereby release said Troxell from all liability under said note.    Said note bears date April 9, 1892.

"CHARLES BOBZIN & CO.,
"By WILLIAM E. WALSH,
"His Agent and Attorney."

On the same day this receipt was executed, Walsh discharged the Troxell mortgage of record.

It appears that on October 12, 1892, Charles Bobzin & Co. made an assignment for the benefit of creditors.    The assignee not having qualified, Herbert Bowen was appointed receiver.    On December 5, 1892, Bobzin & Co., together with Bowen, the receiver, made an assignment in writing to plaintiffs of their claim against Walsh for the moneys collected from Troxell.    Plaintiffs brought suit in the circuit court for these moneys.    On a trial before a jury, Walsh claimed and testified that Charles Bobzin & Co. were indebted to him; that he sent for some money, and their bookkeeper brought him this mortgage, and told him

to collect it and apply it upon his account; that he saw Bobzin about it, and he told him to collect and so apply the money. He admitted signing the receipt, and that he understood the terms of it.

Mr. Park was called as a witness for the defendant, and testified that he went to the plaintiffs for the Troxells to find out about the chattel mortgage, and paid the money to Walsh, but that 'Walsh at that time told him that Bobzin & Co. were indebted to him, and that the money, when collected, was to be applied on his account; that he told Walsh at that time that the plaintiffs looked to Bobzin & Co. for their pay on the Troxell note. The plaintiffs testified that, after Walsh collected this money, he telephoned them he would send them a check for it. This is denied by Walsh.

The court directed the jury substantially that if the money was paid with the full knowledge on the part of the Troxells, and with their consent, that Walsh might apply it on his own account with Bobzin & Co., and if they were then willing to look to the agreement which was made between Mr. Walsh, as agent for Bobzin & Co., and themselves for their security, then, under these circumstances, Walsh would have the right to make that application of the money, and it would not be a payment to him for the benefit of plaintiffs. The court was asked to charge the jury that there was no evidence showing that Mr. Park had authority to make such an arrangement for Mr. Troxell, and that there was no evidence that Mr. Troxell ever authorized such an arrangement to be made. This was refused. The jury found a verdict in favor of the defendant.

This judgment must be reversed. The defendant had no right, under the circumstances stated, to apply this money upon his own account. It is evident from the receipt which he gave that it was not contemplated by the

parties that these moneys should be applied upon his individual account against Charles Bobzin & Co., but in payment of the Troxell note, which defendant knew was at that time held by plaintiffs. It was not understood between the parties that defendant was thereafter to pay the Troxell note to plaintiffs, and that, when he did so, he was to surrender it to the Troxells, but the moneys were received in payment and discharge of that note and of the mortgage. It was in full for said note. Acting upon it, defendant canceled the mortgage, and became bound, not only to the Troxells, but to Charles Bobzin & Co., to pay the note, if plaintiffs' theory be true. The plaintiffs, under their assignment from Charles Bobzin & Co. and the assignee, had a right of action against him for it.

The court should have given the plaintiffs' request to charge. There was no evidence in the case showing, or tending to show, that Mr. Troxell ever authorized Mr. Park to make any arrangement that Walsh should keep this money, and apply it upon his own account. Mr. Park says that he was attempting to protect the Troxells from paying the note twice, and Mr. Troxell was not consulted by Walsh about it. It was Troxell's money, and paid by Park to take up this very note. Mr. Walsh so understood it, and yet, if his theory be correct, Troxell is still liable on the note to the plaintiffs.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.